The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning. We'll hear argument first in No. 20-1476, S.C. Johnson & Son Inc. v. United States. Mr. Rohl. Good morning and may it please the Court. We are asking this Court to reverse the judgment of the Court below and to find that the plastic sandwich bags that are at issue in this case are classifiable as household articles based on the clear and actually sometimes unremarkable evidence that sandwich bags belong to the class or kind of articles that are commonly used in and around the home. The Court below me. Mr. Rohl, this is Judge Dyke. Just so we can be clear about what the issue is here. Yes. As I understand it, you're making two arguments. One is that 3923 is limited to commercial or bulk transport and therefore wouldn't include these bags. And second, that 3924 is not an eonominy provision but a use provision. Is that correct? Your Honor, I agree with the characterization of the second part, which is to say that 3924 is not an eonominy provision but is a use provision. I agree with that. With regard to the first characterization of our argument about 3923 being limited to commercial and bulk type of transport containers, that's part of the analysis. But I would phrase our argument as being that the sandwich bags are not of the class or kind of merchandise classifiable in Heading 93923 and that there's no evidence to support a class or kind finding for Heading 3923. But the bulk and commercial issue is part of that argument. Okay. So if you lose on both of those, you lose the case then, right? I'm just thinking that there is – if you conclude that the principal use that the court below made a correct principal use determination that the goods are used to pack or convey articles as that class or kind is defined in 3923, then I guess I would have to concede that that would be the end of it. Yes. Okay. Go ahead. It seems as though the dictionaries define household items or household articles as meaning things found in the household rather than things used in the household. If we conclude that that's the definition of household articles, then it's not a use provision, right? If you stick to just the dictionary definition and you say that it's things that are located in the home, I suppose you could say these things are not household articles. But even under that definition, the court below, with that same definition you're using, Judge Dyke, found that these are household articles. It's important to remember that Judge Below did not say these are not household articles. If we accept the definition that it means articles found in the home, then it's not a use provision, right? I'm not sure I would concede that only because, first of all, there's no such thing in tariff interpretation as a location provision. So you have to still conduct a use provision to find out whether it's found in the home or not. If you're just going to say something found in the home is the test and say, therefore, it's not a use provision, that would seem to be creating new law, which I suppose, of course, the court is able to do that. But you still need to conduct a use analysis to know if something is found in the home. The court's precedent is clear on that. U.S. v. Brockman, which we cited in our brief, talks about if the adjective, right, the word articles, if household articles is what we're interpreting here, articles by itself means virtually nothing. That's a very broad, broad description. So we have the adjective household that modifies the noun articles. And that makes it not an aonomaly provision, according to U.S. v. Brockman, because we just have an adjective in front of a noun. And as we cite in our brief, all the hundred years of cases that talk about household being a use provision, this court's decision in SGI, I think, household is a use provision. So I suppose the court's always free to deviate from that and create new law, but it would be breaking with literally about a hundred years of precedent on the interpretation of the word household. Counsel, where in SGI did we say household article is a use provision? It's on page, I believe it's page 1468. Let me just confirm the page. It was towards the end of the last paragraph, the decision above the word conclusion. As the Court of International Trade found, I'm reading, the coolers may be considered household articles because the coolers may be used in a number of locations where food or beverages might be consumed, such as in and around the home and during trips away from home on picnics, sporting, and at spectator and participation sporting events, end quote. So that's the extent of it? Well, I mean, I guess one can belittle to say that that's the extent of it, but the court said used and made reference to the use, and that combined with the other cases we cited, for example, with household utensils, which multiple times this court's predecessor, the CCPA, said is a use provision. Counsel, this is Judge O'Malley. What would your analysis be if we said that both are use provisions? If both are use provisions, which we would say, I mean, our position is both of these provisions, meaning 3923 and 3924, our contention is they are both use provisions. The error the court below made is in not treating them that way, and then once you treat them as both being use provisions, you must conduct... Where would you go with the analysis? What's next then? Oh, then the next is to figure out what is the class or kind of merchandise described by household articles, and what is the class or kind of merchandise described by articles for the packing or conveyance of goods. And to figure that out, it's the carborundum factors that come into play. Right. So how would you apply the carborundum factors, assuming we got there? Sure. So if we got there, you would look at first what are the physical characteristics of these bags and of household articles. And you would see in the case of the bags here, as we cited and as the judge below agreed, they're kosher, they're tested for the absence of BPA, they're made with special resins that have to be safe for food contact. Now, the physical characteristics about these bags are all built around food, and food is a household article. That would be the first factor. The second factor, which is used in the same manner as the class, the evidence in the joint appendix, and I can provide the pages if that's useful, show that the overwhelming use of these bags and the actual use of the bags is for food and storing food in the house and taking goods out of the house. The expectation is the ultimate purchaser. Again, the joint appendix is replete with evidence showing that when someone buys one of these bags, they're buying it for food storage purposes. They're not buying it to carry around a bunch of paper clips in the bag. No, but it would seem as though the question is, is the principal use of the bags to carry, let's say, foodstuffs from home to school or home to work, or is the principal use of the bags to store food in the home, right? It's both. In other words, the bags are used for both purposes. They're used for storing food in the home. After you make a sandwich in your kitchen and you're done with it and you want to put it in the refrigerator, you put it in the bag and put it in the fridge. It's also, of course, to take food to school, just like the coolers in SGI were used to store things and to carry things. The court in SGI didn't say, because I can carry something in there, that that makes it fall into 3923. Counsel, there can be only one principal use, right? Correct, and it's the use that exceeds all others. Right, but if you look at the plain language of the headings, and the sandwich bags certainly would qualify as articles for the conveyance or packing of goods, correct? I would disagree with that. Assume that we reject the commercial or bulk transport limitation. The answer to Judge Armant's question would then be yes? No, because you're defining it by saying, I mean, I understand why it's tempting to reach the conclusion that if you can put a sandwich in the bag and carry it to school that you're packing and conveying a good, but the language of that provision is not that broad, that if you just pack or carry something, it falls in 3923. How do we know that? We know that because the explanatory notes make clear that household articles don't go in 3923. It says that right in the explanatory notes, number one. Number two, as I said, SGI would have come out differently if that was the breadth of heading 3923. But was there really a comparison in SGI? Wasn't the court simply comparing 3924 and 4202? Well, the plaintiff argued for 3923 and 3924, and so the court necessarily had to consider. Yes, the court did not have a detailed discussion in SGI in the language of the opinion, but clearly the court had to consider it and reject it under its Jarvis-Clark responsibilities. Counsel, this is Judge Moore. Was the language of 3923 the same when SGI was decided, or did it used to say manufacture as opposed to goods? At the time SGI was decided, heading 3923 read the same as it reads today. It was heading 4202 that underwent a subsequent change, but the operative language in 3924 and 3923 was the same. Again, this idea that something has to be found in the home in order to be a household article and because you're going to carry your sandwich bag to school, therefore makes it for packing or conveying, is just simply not supported either by the history of the tariff as well. We pointed out the predecessor tariff, which of course is not binding here, we acknowledge that, but has the same distinction between—I realize I'm eating into my rebuttal time, but just to wrap up on this point— called out sandwich bags as not being things for packing or conveying goods and called them out as not falling under the equivalent of today's 3923. I want to reserve, if I can, the rest of my time. We'll let you reserve some time, but I'm not sure we're done with the questions yet. Why is it 3923 does not apply to the extent that the bags are used to convey food to schools or workplaces? Why is it that heading 3923 doesn't apply? Because you have to identify what is the—the question is not, is this sandwich bag used for packing or conveying something? That would be an AO nominee approach. The question is, what is the class or kind of merchandise that falls in heading 3923? It simply makes no sense to say that any bag that can carry something, whether it's a—forgive the phrase—a poop bag for your dog, a sandwich bag here, a bag you get at the produce aisle in the grocery store, you cannot say all those are for the packing or conveyance of goods and it's all one single class of articles. Class or kind looks at commercial fungibility, and a contractor who gets a—needs a heavy-duty contractor bag is going to be sorely disappointed if someone gives them a sandwich bag. Same thing with the child who brings the goldfish home in the sandwich bag. That leaks. There's a class or kind analysis with the carborundum factors that has to be looked at in order to figure out what is the group of products that fall within there. Well, counsel, this is Judge Moore. Just following up on Judge Dyke's question, 3923 has other sub-elements that seem to contradict the definitions you are proposing. I mean, isn't—when they talk about polyethylene retail carrying bags, aren't they grocery store shopping bags? First of all, those bags are not at issue here, and there's no evidence. But your argument is what is encompassed within 3923, and it contains a specific subheading saying that grocery store shopping bags, I think, are encompassed by 3923. That seems to sort of contradict your bigger picture argument about what 3923 is directed to. It may call out those types of bags, but it also calls out— and so I think it would be selective reading of explanatory notes— it calls out that household articles don't fall in 3923. Counsel, we don't get to the explanatory notes, do we? I mean, if we are focusing on the HDS-US itself, the explanatory notes are only secondary, correct? Correct, but you made a reference to shopping bags, and those are not called out in heading 3923. Remember in Orlando, this court held you first have to decide at the heading, at the four-digit level, are we described by the four digits, and the four digits here only say articles for the conveyance or packing of goods, of plastics. Oh, I see. Am I understanding your argument to be I should disregard everything else in 3923, like 3923.10, 3923.21, 3923.29, that somehow I should disregard all of those subcategories within 3923 as not informing what 3923 itself is focused on? You have to disregard it. I wouldn't say you should. You must. That's the teaching of Orlando. You must resolve at the heading level first, because everything below there is just a subset of whatever you've defined the heading to be. Wait, counsel, but the problem I'm having is, if everything below is specifically called out, and if this is a statute to which we have to give deference, and it specifically calls out things that would be excluded under your definition of the general heading, isn't that teaching us that your definition of the general heading is probably not what Congress intended? It doesn't follow, if I can just answer that question. Just because there's a call-out for sacks and bags at the six-digit level doesn't mean that every sack and bag falls in there. It has to be something that's described in 3923 at the heading level. Those sacks and bags fall in there, for sure. But also, just my last point, and then if I can just reserve, there's no evidence in the opinion below in the Joint Appendix anywhere about what is the class or kind of merchandise that falls in 3923. Unless my colleagues have further questions, you're out of time, but we'll give you two minutes for rebuttal. Thank you. Okay, Ms. Triana. Good morning, Your Honor. May it please the Court. My name is Monica Triana from the U.S. Department of Justice, and I represent the United States on this appeal. As to both headings 3923 and 3924, the trial court conducted the necessary two-step classification analysis. It identified the proper meaning of each of the relevant tariff provisions in accordance with its plain meaning as required under GRI 1, and then properly applied the facts in determining that the merchandise fell within those provisions. As to heading 3923, the trial court properly classified the goods of merchandise as articles for the conveyance or packing of goods. That is the class or kind of merchandise under 3923, for the conveyance or packing of goods. And the trial court determined that the meaning of the tariff, in accordance with the plain language, properly held that it covered goods of class used to carry or transport other goods of any kind. And in making that determination, the court looked to the terms of the heading and then the dictionary definitions for any undefined terms. And this interpretation is confirmed by review of the explanatory notes, 3923, which include the list of exemplars used to carry or transport goods, some of which are carrying and transport personal items, and some of which carry and transport commercial products. And although the proper meaning of the tariff is a question of law, review de novo, this trial court's analysis of the heading was proper and should be affirmed. And as I think the panel just mentioned earlier, the EN specifically includes a list of sacks and bags. And then second, the court determined that the merchandise, properly determined that the merchandise fell within heading 3923 as it was construed, which is a question of law. Excuse me. I'm sorry. This is just more. I want to understand procedurally. When you're looking at 3923 and trying to understand what it encompasses, like, for example, can goods imply food or not, that kind of thing, if you're trying to look at 3923 and understand it, is it wrong to look at the specific articulated things underneath, like 3923.21, which includes grocery store bags, or the one that includes re-closable one-gallon bags, which I assume are basically Ziploc bags with a little slide on the top in a one-gallon size. So is it wrong for me to look at those and say, well, those inform what Congress meant when they said articles for the conveyance or packing of goods? Sure. So I would agree with Mr. Rohl that we start out with the language of the heading. That is what the case law dictates to us, and we would look at conveyance or packing of goods. I understand that we start with the language of the heading, but this entire thing that I'm looking at was enacted by Congress, correct? Not just 3923, but the subcategories were also enacted by Congress, right? So, yes, I would say that they definitely inform the analysis. I was just saying that, obviously, we would start with the language of the heading, and when we get past that, because these clearly appear to convey and pack goods, the language of the subheading should inform an analysis of what falls within a particular heading, certainly. In fact, wouldn't it be problematic if I construed 3923 itself in a manner which didn't allow all of the subheadings to fall within it? Wouldn't that be problematic? It would indicate that the analysis that you're conducting of the heading was not proper. Counsel, this is Judge O'Malley. Should we be focused then on, I mean, when we're trying to look at what's the most specific heading, should we be focused on whether or not there's contemplation of packing of food and beverage as opposed to just packing of goods generally? No. Packing of food and beverage is not a relevant determination, either for heading 3923 or heading 3924. Food and beverage comes in because of the reliance by appellant on SGI, and as I think Your Honor mentioned earlier, SGI's focus really was on 4202 versus 3924, and they didn't do some generous analysis under 4202 finding what characteristics were considered in all the headings of 4202, and then they had essentially a carve-out for what didn't fall under 4202 at the time, and that's where food and beverage came in. It was a carve-out to what doesn't fit under 4202. Or what didn't at the time because the statute has since changed. So whether or not something is involved with food or beverage isn't relevant. It's not relevant for the conveyance or packing of goods, and it's not relevant for household articles, as is evident from the explanatory notes as what fits within them. I'm not saying that something that contains food or beverage couldn't fit in either of those headings. It's just not a relevant determination in whether specifically it's classified under 3923 or 3924. 3923 is a principal use. Counsel, this is Judge Moore. Will you just slow down a little? My ears aren't as fast as your voice. I'm so sorry. I will definitely slow it down a little bit. So what are we supposed to make of these lower court cases that S.C. Johnson calls to our attention, which seem to support its interpretation of 3923? Are they just wrong? How did that happen? 3923 for the conveyance or packing of goods. I don't believe there's any lower court cases that discuss that. Are you referring to the household goods? I thought there were cases that had earlier talked about this as being commercial or bulk provision. Are you thinking about that? I'm sorry. I think you might be referencing there were some agency decisions, and we acknowledge that there are some agency decisions that generally state that generally 3923 covers plastics used to pack or convey bulk or commercial items. But it's not limited thereto. And the course review of the interpretation of the statute is no vote, in accordance with GRI 1. And GRI 1 dictates that it covers goods of plastic used to carry or transport other goods of any kind. And the merchandise here fits in that category. An agency's decision can't ask to narrow the scope of a statute, what's plainly included in a statute, which here covers all plastic items principally used to convey and pack goods. I'm just wondering how that happened, that they arrived at an interpretation which seems contrary to the text of the statute. I can't say as far as the agency's decision. I can't say for sure. I think it might have been because the prior statute, the TSUS, might have been more limited, as I believe 77220, which is something that the appellant has brought up, was more limited than 3923, and it got carried forward erroneously. But 3923 is not limited to the packing or conveying of bulk or commercial items, as is clear from the plain language of the statute. And the trial court properly found that these prior rulings can be unpersuasive. And there actually is a ruling that was issued to S.C. Johnson's predecessor, Dow Chemicals, that actually classified the bags in heading 3923. Counsel, to what extent are we supposed to use common sense here? I mean, when you look at household articles of plastics, pretty much the first thing you think of is plastic bags that we all use in our kitchens. So why isn't that supposed to be something we should consider? I mean, it certainly is something that you can consider. Here, household articles is an eonominate provision covering goods ever related to the household, and the trial court found that they were classified there. And we're not challenging that determination by the court that they were classified under household articles. I think the question is what the next step is. We found that they are classifiable in 3923, which is a principal use provision, and they're also classifiable in 3924, which is an eonominate provision. So at that point, you do a conducted GRI 3A specificity analysis, and you look at the heading which provides the most specific description, and that's preferred to the heading that provides a more general description. You look at the provision with requirements that are more difficult to satisfy, and generally speaking. Counsel, again, you're going to have to slow down, but what if we disagree with you that it's an eonominate provision? Then what? The court already did. If there are two principal use provisions, certainly there can't be two principal uses for the merchandise. But the court already conducted an analysis. They conducted a factual analysis. They made findings of fact and conducted a proper carborundum analysis determining that the class or kind of goods or the principal use of the merchandise is to convey impact goods, and that it's classifiable under 3923. Did the court really make it? Did the current national trade really make a determination that if they were both use provisions that the principal use was household, was conveyance of goods rather than household storage? No, the court didn't conduct that analysis because the court found that 3924 was an eonominate provision, but there can only be one principal use of the merchandise, and the court conducted an analysis of the fact, looked at the carborundum factors, applied the carborundum factors, and determined that the principal use of the bag was for the conveyance or packing of goods. Yeah, but if Judge O'Malley's question, the premise of Judge O'Malley's question is that we were to determine that they're both use provisions, then we have to decide which use is predominant. Is that right? Well, I don't believe that this court would make that determination because I don't think there's been, what you would look at under 3924, if that were a principal use provision, is whether the good was principally used in the home, and the court didn't look at that below. The court looked at, they found it was 3924 as a household article because it could be found in the home. The court did not find that it was principally used in the home, so to the extent that there's more factual analysis that would be necessary and not just the analysis that was conducted under 3923, I believe the matter would have to be remanded back to the trial court to do, if further analysis of the facts was necessary, to determine what the principal use of the goods was. With that said, I believe that the court already did that and found that the principal use of the merchandise was for the conveyance and packing of goods. Even though they found it classifiable in heading 3924 as household goods, what the court found was it was a household good because it could be in the home. The court did not find that it was principally used in the home. As a matter of fact, a lot of the evidence that the trial court found and the findings of fact, and a lot of the evidence on the record, found that the principal use of the goods was to transport merchandise or goods or food or anything from one place to another. I think that the factual findings are clear. There was no clear error in the court's factual determination as to what the principal use of the goods is. So if we decide that 3924 means goods typically found in the home, does that make it an eonominy provision? I believe it does. It doesn't make it a use provision, and typically a provision is either an eonominy provision or a use provision. That would make it an eonominy provision. A use provision is a very specific, it's a precise term of art in this area of the law for the legal standard where a care of classification is controlled by use. The term household article doesn't suggest or dictate a type of use or describe the manner in which an article is used, and for that reason the court properly declined to read use into the provision. As the court stated, it suggests a location in which the article may be used. This provision simply doesn't meet the standard of a principal use provision. A location in which it may be used? I would have thought you'd say it was a location where it's found. The trial court found the location in which it may be used, may be found. You're right, found, because they're not all utilitarian articles. And looking at each of the items listed in the explanatory notes, ashtrays, hot water bottles, dustbins, drapes, they all have distinct and separate uses. There is no single use that defines this class or kind of goods. And actually the fact that the principal use analysis under the carborundum factor offers very little assistance in determining a class or kind of goods under 3924 is just further evidence that this isn't a principal use provision. If you look at those same examples, ashtrays, buckets, dust covers, they all have different physical features, they all have different uses, they all have different consumer expectations, different channels of trade, different environments of sales or marketing. The fact that that analysis does not assist in coming to a determination as to the principal use of the goods, as I said, is further indication that this is not a principal use provision. And the prior precedent, nothing indicates that just having a household or a noun of household plus articles means that this is a principal use provision. As counsel for the appellant mentioned, most of those cases are interpreting the TSUS and most of them are interpreting household utensils, not household articles. And utensils, it's an entirely different interpretation. Counsel. Counsel. Counsel. I've come to the conclusion you're physically incapable of slowing down and you don't actually need oxygen. Apart from that conclusion, the TSUS, to my right and understanding, it didn't use to say tableware, kitchenware, other household articles, which sound very much like nouns and not verbs, which is what I think of when I'm thinking use, but that it used to say articles chiefly used in the household for blank, blank, blank, preparing, serving, storing, whatever. That feels like, to me, a use provision, just like articles for conveyance feels like a use provision. But, you know, tableware, kitchenware, household articles, trays, curtains, nursing nipples, that sounds like nouns. It just feels very eonominate to me. Is that fair? I mean, I realize this sounds kind of touchy and feely on my part, but I understand these use provisions to sort of suggest verb, use, things that are used for something. Well, I apologize, Dana, for my speaking fast, but I agree. This does not feel like a use provision. A use indicates doing something in a certain way, like 3923, conveyance or packing of goods. The predecessor statute did have a different language. Another reason that interpreting the predecessor statute is not relevant to interpreting the current statute. And if I can make one more point. Maybe the change in the language suggests an intent to change the scope of the provision. Absolutely. And I believe. To an eonominate provision. Absolutely, Your Honor. And I believe that's true for both 3923 and 3924. The difference in the language. And there's federal circuit case law on this, likely indicates a change in the meaning. I heard my buzzer went off again. Thank you. Thank you, Your Honors. Okay. Thank you, Ms. Triana. Mr. Rohl, you have two minutes. Yes. Just to pick up on this discussion earlier about the breakouts under heading 3923 that I see the court was referring to, like recosable with integral extruded closure. Those things, those are statistical suffixes. So they don't inform. In fact, in Pilatex, this court said that the statistical suffixes don't inform the scope of the heading or even of the subheadings. In other words, they're not law. They're not statute. You would frustrate no statute by treating, by first interpreting what the heading means. So that was just to address the court's point on those breakouts where you seem to be focusing on very specific types of bags that are called out there. Those are not statutes. Number two, about this idea that it sounds kind of nounish to say household articles. So is the word toy. Toy is a noun. Yet this court's precedent says that's a use provision because you have to be principally used for the amusement of children or adults. So that's a use provision. The toy provision is different in the sense that the dictionaries define toy in terms of use, whereas I don't see that the dictionaries here define household articles in terms of use. Okay. Understood. But as a matter of policy, if the court were to conclude that household article is not a use provision, does that mean anything I'm going to put in my house, a forklift, an iPhone, anything I put in the house, is it going to be a household article? That's going to be the implication of the decision if that's a noun. Well, first off, counsel, I think they'd have to be made of plastic. And I'm not sure if it's made of plastic. Secondly, as far as your comment goes, wouldn't it depend, in fact, on whether they were otherwise called out in some other section that more specifically governed them as opposed to the general household article section? No, but anything, fair enough, but anything that is of plastic that I put in my house would, therefore, be a household article as long as it's not more specific. The heading means typically found in a house. It doesn't mean that you can bring a forklift into the house and, therefore, would be within the provision. But how would you define typically in that case? In other words, you would have to figure out what is commonly used in the house to figure out if it's typically in the house. That's the use analysis. I know I'm out of time, just 30 seconds or less. One last thing I just want to address about the agency decisions that were referenced below. Of course, you're not binding on this court, but the agency, the expert in this, over and over again, has to struggle with all the types of things we're struggling with here in this case. It consistently said, that's why Judge Dikey referenced the commercial, or you're asking us about commercial and bulk articles. When they had to figure out where do we draw the line in terms of the breadth of 3923, their pronouncements, not just sometimes, but consistently said, we, the agency interpreters, mean commercial and bulk items are what fall in 3923. That's some indication. Thank you, Mr. Olson. We're out of time. Thank you, Your Honors. Okay. Thank you. The case is submitted. Thank you.